May it please the Court, my name is John Rauschway, and I represent the appellant, Atlantic Richfield Company. I understand that I've been allotted 15 minutes for my argument this morning, and I would like to reserve approximately 5 minutes of that time to rebut the arguments of my opponent. Let's keep that button up there, change the color, you know. There are two principal issues in this appeal, both are dispositive. The first issue is whether the release in the settlement agreement and the final judgment in this case bars the claims of the plaintiffs in the recently filed Christian case. The second issue is, if the release does bar those claims, who's bound by that release? Mr. Rancho, Rauschway, I guess. Rauschway. Rauschway, I'm sorry. I practiced law for a long time, 37 years in the private sector, and did hundreds and hundreds of general releases and limited releases. And as I look at the release in this document, and given the, I'm sure, excellent legal counsel that ARCO had, I don't see where this is a general release. I mean, sure, you have that little piece about known or unknown with respect to the drain tiles, but how does this get to be a general release? I mean, you folks know how to draft a general release. This isn't a general release. How does it get to be one? It is a general release. There are two components. How does it get to be one? There are two pieces to it, two discrete categories of release claims. And that's clear in the language of the judgment and also in the attached settlement agreement where it's separately enumerated. The first category is all claims the plaintiffs had against Atlantic Richfield as of September 1992, whether known or unknown. But that's the general release. You're leaving out part of it, though. It's tied to another part of this. It's not known and unknown generally. It's related to the drain tiles. No. You've got to read the whole thing. The language appears on pages 15 and 16 of the brief, but there are two categories. The first one is unqualified. All claims the plaintiffs had against Atlantic Richfield as of September 1992, whether known or unknown, unqualified. Then where it's separately enumerated, part two in the settlement agreement, where it's just separated by a semicolon in the judgment, is all future claims the plaintiffs had against Atlantic Richfield related to the drain tile system. So there are clearly two categories of claims that were released. One is the broad general release you're talking about, and the second is the claim, the release of future claims restricted to the drain tile system. So, Mr. Roshway, your argument, I guess, is a grammatical interpretation that the conjunctive and separates the two distinct clauses 1 and 2 and is modified by the term complete release. That's correct. And it's not just the and. You know, I think it couldn't be clearer in the settlement agreement, which, by the way, is incorporated, expressly incorporated and attached to the judgment. Well, the settlement agreement uses a slightly different language, does it? It does. It does. Is there some reason why you didn't just use identical language? We – there's nothing in the record that reveals why that was the case, and I have not been able to find that out. But with respect to the general release, that language is identical or substantially so. And this makes perfect sense. If the release were limited only to drain tile claims, there would be no point to the release. You know, you would get a release of all drain tile claims through the ordinary operation of res judicata by dismissal with prejudice. And what was the complaint about with respect to the drain tiles? Well, the complaint was essentially a number of components, and the number of different claims are eight claims in the original complaint and eight in the amended. But it was a claim for injunctive and declaratory relief to require Atlantic Ridge Field to maintain the system, also for damages, for failure to maintain the system, diminution of property value. I think there was a claim for damages in the complaint of upwards of $12 million and also punitive damages related to that. And a component of the diminution in property value claims related to allegations that contamination from Anaconda smelter had infiltrated the drain tile system and migrated onto the plaintiff's properties. Because what? Because the drain tile system was defective? Because the drain tile system was defective and the contamination was in the groundwater and the drain tile system. There were no allegations in the complaint, were there, about contamination? No, not in the complaint. But that was made clear through subsequent prosecution of the lawsuit by the plaintiffs. How about when the judge sat down to approve the settlement? Was there any discussion then about those kinds of claims? There's nothing in the record about what was discussed at the settlement agreement other than what appears in the order approving the class action settlement. Do you think that the language of this release is so clear that it's just unambiguous? At least as to the scope of the general release, it is unambiguous, yes. You don't think it could be read as just limiting it, that it just applies only to the drain system? Absolutely not. And there's a number of legal rules of construction that would preclude that result. The last antecedent rule is one of the ones we discussed in our brief. And I think that what really puts that issue to rest is the separate enumeration and breaking out of the two categories in the settlement agreement. There would be no point for the internal numbering if those categories were all intended to be subsumed and related only to the drain tile system. Can you have a general release like this with the class action? Yes, you can, as long as it arises from the ______. To what extent does it bind members of the class who had, you know, who were just getting these notices? Well, there's quite a bit bound up in your question, and I'll try to take it in order. First, it's important to know that this was both an individual release and a class release. And so there is almost no limitation on the scope of a general release that can be given in an individual lawsuit. This Court has acknowledged that in the Epstein case, the first Epstein opinion. And that's true under Montana law with respect, you know, with limited exceptions, such as, you know, releasing all future claims for obvious reasons. The scope of a release that's permissible in a class action is more circumscribed, generally limited to claims that arise from the same factual predicate as the class claims. One additional point to make there, though, is that the scope of a release in a class action claim is a substantive challenge. And, again, this Court's precedent in Epstein bars collateral attack on a class action settlement related to the scope of the released claims. Can I get back to the earlier action, or get to the earlier action? There was evidence about heavy metal contamination that was produced during discovery. That would initially suggest this was intended to be a broader release, more along the lines of what you have in mind. Yet ARCO consistently objected to reference of that evidence as being, in quotes, irrelevant to the drain tile litigation. We did. If you were correct, why would you have objected to that? Because that would have been the very scope that you were talking about. I mean, everything and anything that may have happened there. You're right. We did object to that, and we lost. What I'm getting to is that you raised the objection because you said it was irrelevant to the drain tile litigation, which is what you were dealing with here. So even though you lost, you objected because as far as you were concerned, that wasn't what this litigation dealt with, was it? That's right. And in the initial stages of the litigation, ARCO's counsel did not understand this to be a contamination case, but rather to be a drain tile case. And the case proceeded in that fashion for a number of years. Then we were served with the discovery request that requested all manner of test results, soil, groundwater, EPA correspondence, and things of that nature related to the nearby Anaconda Superfund site. And we objected to that discovery request because we, in fact, did believe those to be outside the scope of the claims as pleaded. And we lost on that case. The judge granted the plaintiff's motion to compel in part, and we had to produce that discovery. On the heels of that order, we received an expert witness disclosure from the plaintiffs that said they were going to call witnesses at trial who were going to testify that contamination from the ARCO smelter had damaged the plaintiff's properties, soil contamination, groundwater contamination, et cetera. But then you settled it on the narrower grounds, did you not? No. Once that issue was injected into the case, we determined to get a general release that would cover those kind of claims. And I would submit to you that that's what any defendant would insist upon in this kind of case. So if I understand your answer to Judge Smith's question, it is that ARCO, in the early stages of litigation, was trying to keep the scope narrowly confined to the drain tile system. But when the district court overruled the resistance to producing contamination discovery, ARCO settled the case because they didn't want to expand the scope of the lawsuit to include contamination claims, and that that was the reason why the release was written as broadly as it was? Well, I'm not sure there's a direct cause and effect between that. But essentially, yes. Once that issue was in the case, first through the motion to compel litigation and more clearly through the expert disclosure, Atlantic Richfield was determined that any release it would get would prevent these same plaintiffs for suing them in the future over the same contamination for damage to the same properties. For known or unknown? Known or unknown, yes. Now, help me because I should understand this just from an engineering standpoint. What is a drain tile system? I realize it must be a pretty rudimentary type of a water system since it was built 100 years ago. But how could it be contaminated by heavy metal? Well, I don't profess to have an engineer's understanding of it, but essentially this town, the town of Opportunity, was created to house the workforce. Yeah, I know the history. I know the history of Opportunity. I'm just trying to figure out. I assume this was all trying to give safe water, drinking water, to the residents, right? No, it was just to dewater the town. Oh, to dewater. It was a marshy area. This was intended to lower the water table so that you could build in that area. And the theory that the plaintiffs were offering, as best I can discern from their expert witness disclosure, is that existing contamination from the smelter in the groundwater, the heavy metals you referred to, had gotten into the drain tile system and through the passage of the water through that system underneath their properties was contaminating their properties, including their wells. Their drinking water, their wells. Yes. Okay. To what extent do we look to the context of all the language in the settlement agreement, which was quite a substantial settlement agreement? It is. A lot of terms to it and systems for individual claims relating to the drain tile. Well, as to the scope of the release, I don't think that it is necessary to review the entire document because the language is substantially identical, at least as to the scope of past existing claims in 1992. There may be reasons to review the language of the settlement agreement. So we just should speak out and just look at this isolated little clause that's buried in paragraph 21 down at the bottom of the settlement agreement and just look at that? No. And that's all we should do? I'm not telling you how you should or should not read the settlement agreement, but I'd point out that that same language is right on the face of the judgment, which is a two-page document. But the language of the judgment, though, as Judge Tallman said, it's a little bit different, right? Not as to the scope. As to perhaps who is bound by it. Where's the language in the judgment? Both of them appear on the judgment. All claims released here above, released all claims, each of them, and any member of the class may have against the defendants, whether known or unknown? Correct. Is that the language? Yes. And has released on behalf of themselves and their heirs? And has released. And that's the second part of the release. All claims that may arise in the future against defendants that involve or that in any way relate to the drain tile system? Right. That's the second component of the release. You agree that in the settlement agreement that the release language speaks of a future event that the parties will execute. You agree with that, right? It is worded that way, yes. So it's still executory. It's not finalized at that point. Just saying as part of this, this is what you're going to do in the future. And you're saying that it is the judgment itself that constitutes the consummated fulfillment of this release. Is that your position? That's right. I mean, this was the product of a long process under court supervision that went on for many months. And that's the reason why some of the terms in the settlement agreement did not match up exactly with the judgment. Actually, what it provides for is that each individual ultimately signed a separate release. That's what the settlement agreement initially contemplated. And some of them did, in fact, sign it. And I didn't see any of the individual releases. Well, there are individual signatures on the settlement agreement itself. Right. But that settlement agreement, if you read it very carefully, it says the plaintiffs, let's see, will agree and covenant and, let's see, plaintiffs specifically covenant and agree that at the time of the aforementioned judgment is entered, they and each representative party will individually on behalf of the class execute a complete release of all claims against ARCO. And that complete release is contained in the settlement agreement. As I said, this – If I read that, it's like each individual would sign a separate release. Well, I'm not sure that's correct. And there's nothing in the record – It says at the time of the aforementioned – at the time judgment is entered. Was judgment entered the day they signed this release, this agreement? No. Judgment was entered subsequent to that. And the shape of this thing changed. And I think largely for logistical reasons and convenience, it was determined that everyone's signature was not going to be obtained in the town. We're talking about over 200 signatures. And rather, the court would enter judgment according to the terms of the settlement agreement. Excuse me. If this had to go back for a trial on what the parties intended, what is the evidence that they actually intended to encompass a much broader release? The parole act. I don't know that we've gotten into that. There were some affidavits produced by both sides which we think are – you know, the ones produced by the plaintiffs are inadmissible because they relate to subjective intention and things of that nature that aren't admissible under Montana law. But I don't think that we need to do that because I think the language on the scope of the release really doesn't admit of any other reading. Well, you know, that's your argument. I don't know if I agree with you. Well, I think that we don't know. We don't know what the – I'm just curious. What would happen if you had to go back? I mean, there may be correspondence that detailed the parties' expectations with respect to the release or prior drafts, and perhaps that would be admissible. I'm not certain of that. If we ruled in your favor, though, under Montana law, wouldn't we have to remand, even if we agree that the release language is unambiguous for determination by the district court as to whether or not under Montana law these provisions are unconscionable and unenforceable? Well, no argument like that has been offered in this case. There may be some point, you know, with respect to the general release portion where doctrines like that would come into play. For example, if there was a car accident the day before the settlement agreement was signed with an ARCO tanker truck or something. But that's not the issue we have here. I mean, we have a property damage claim that was explicitly within the contemplation of the parties in a claim in a case that asserted property damage. In fact, it's the same properties and it's the same contamination. So I don't think that those types of doctrines would be implicated in the way we're trying to apply the release here. And those arguments were not raised below or in the appellant's case. I'll let you go over your time. Thank you. Thank you. May it please the Court. Mark Kovacic on behalf of the interveners and appellees in this matter. I want to start by pointing out that it is not accurate to suggest that the class members in the Daniels case, that all of the class members were also individual plaintiffs. It was suggested here this morning and has been suggested rather strongly in the briefing that all of these people falling within the definition of the class certified were actually individual plaintiffs who asserted individual claims. And that is absolutely not true. But is that issue before us? I mean, if we affirm on behalf of and adopt ARCO's position, wouldn't the district court handling the, is it the Christian case? Is that the related case? The related case is titled Christian, yes, Your Honor. I mean, wouldn't that be an issue that would then have to be litigated in the Christian case? I am a plaintiff in this action, but I was not a signator nor am I a successor in interest to anybody who signed that 1992 settlement agreement. I think the issue is a little more important than that for two reasons. One, ARCO's argument essentially is that the court should disregard the protections that are afforded to absent class members as part of a class settlement for the reason that they were all individual plaintiffs anyway. So that's the first aspect. The second aspect is if they were all individual plaintiffs and individually signed a release, then claim preclusion as to them may be governed by the release that they signed. Right. But many of them were brought in as members of a certified class, never signed any document or participated in the case in any respect. Okay. But maybe I'm missing the point of your answer, but wouldn't that be something that Judge Siebel would have to address in the context of whether or not there are any viable plaintiffs remaining in the Christian litigation? In other words, you may lose some, but you're not going to lose all of them. It could perhaps be done that way, provided there were not a finding that every member meeting the definition of the certified class was actually an individually named plaintiff in the Daniels case. I understand that, but is that issue before us here? I think all you're asking us to do is to rule on whether or not the district court erred in initially determining this was a complete release, but then changing his ruling on reconsideration and saying, no, it's not. Yes, Your Honor, I agree with that. Our primary position is that the release cannot be interpreted as broadly as ARCO attempts to interpret it. Right. That's the issue that we have to decide here today. That's one issue. If you decided, if you affirm the district court on that basis, that would be the end of the inquiry. The inquiry goes a little further. If you were to agree with ARCO's interpretation of the release, then there are additional questions, which are, who is actually bound by the release, and can these absent class members be bound by a release that was entered under these circumstances? That would be an issue. Those would be issues in the Christensen case, right? Well, no, Your Honor. I believe ARCO is raising those issues here. They've moved in this case, asking the court to enter an injunction barring all members of the Daniels class. That's not before us. We don't issue injunctions. That's an argument that's made to Judge Siebel, depending on what we do. That issue may be in the district court, but it's not in the Ninth Circuit. Okay. The next one. In other words, as Judge Thomas said, the only thing that's before us is the district court's ruling on their motion, whatever, I don't know exactly what their motion was, to enforce the settlement agreement, I guess. And he said that it wasn't a general release. So the question before us is, did he err? And it's our position, Your Honor, that he did not. He could read it as a general release, couldn't you? Well, as I read it, it's poorly drafted and they suggest that it's ambiguous. Well, and in fact, ARCO's position that we should follow the last antecedent rule here is actually a recognition that the language is ambiguous, that the last antecedent rule is a rule of construction that is applied sometimes to resolve it. Let me ask you this. Suppose we conclude that it's ambiguous. What happens? I believe the district court did conclude that it was ambiguous, and then looked at the context in which the settlement was reached, which includes certifying a class that related only to a dispute over maintenance of a drain tile system. And the court concluded that that settlement could not have been approved if the release were broad enough to include any and all claims against ARCO, regardless of their origin. Why not? Is it because there is some rule of law or just some principle of class? How you combine the class? The court, in approving a class action settlement, has an obligation to make sure that the settlement is reasonable, fair and equitable to all members of the class, to make sure that absent class members are afforded a full and fair opportunity to litigate any claims that they have that are being addressed as part of the class settlement. Is there any evidence that in the initial case that there was a discussion of these toxic, you know, contaminants, minerals, pollutants, and the like as part of the class fairness consideration? There is not, Your Honor, the evidence on what was discussed at this point, aside from the party's affidavits, which are affidavits of counsel are somewhat conflicting. But the evidence consists of the district court's order where it approved the settlement, actually went through and discussed the nature of the case and made findings that the settlement was reasonable and fair. There's absolutely no mention whatsoever of contamination in that order. There's no mention of any other claims in that order, aside from the claims that were actually asserted in this case, which were for maintenance of a drain tile system. But, counsel, let me see that one point. When Judge Hatfield approved the settlement agreement in 1992, wasn't part of his obligation under Montana law to determine whether the settlement was in the best interest of the class and was fair and reasonable? It was, Your Honor. And I believe that he made that finding with the understanding that what was being settled was the dispute over maintenance of the drain tiles. Did he have to give notice to the absent class members in this case? There was notice sent by a certified mail, and there's a mailing list. ARCO hired a... And in the notice, is there any mention of contamination claims or anything of that nature? None whatsoever. There was a notice that the class was going to be certified, and it's very short. Is it in our excerpts of record? It is, Your Honor. The notice of class certification is at pages 68 and 69 of the excerpts of record. It references count 7 of the complaint, which was a breach of contract claim, arguing that ARCO had a contractual obligation to maintain the drain tile system. There was a subsequent notice sent out of the settlement, which essentially was a document that said nothing other than there's been a settlement reached in this case and attaching a copy of the settlement agreement. So what absent class members received in the way of notice, although there are affidavits from some that they didn't even receive it, and there are some that weren't even on the mailing list, although there's only a few of those, they received the notice of class certification saying that the court is certifying as a class action a claim for maintenance of this drain tile system, and then they later received a 27-page settlement agreement that goes on and on and on about drain tiles, and then at page 21 or something has very ambiguous and difficult-to-understand release language that ARCO is now saying would release any claim that every citizen of opportunity might have had against ARCO in 1992. And then those documents were also recorded with the Deer Lodge County recorder, were they not, as against each piece of property that was affected? Yes, Your Honor, they were. I believe what was recorded, I don't think the notice of class certification was recorded. The final judgment and settlement agreement are at least referenced in the title documents for those properties. So your point was that you kind of, although I don't think you're conceding, I wouldn't say that, but, I mean, you do acknowledge, at least in your view, that Judge Panner thought the agreement was ambiguous, this language of the agreement was somewhat ambiguous. But if you look at what was going on internally within the litigation, it looks like they were only settling the drain tile claim, correct? Yes, Your Honor. Is there any other parole evidence that would further illuminate the intent of the parties here? There are affidavits from a number of the plaintiffs who actually did participate in the Daniels case, in this case, and there are affidavits from some of the absent class members who did not participate. Some of those – Those are kind of subjective. I mean, what are they going to say? They're going to say under oath that they, in prosecuting the drain tile case, intended only to seek compensation for Arco's failure to maintain the drain tiles. How about the lawyers? Is there any correspondence between the lawyers about contamination? I haven't seen any correspondence. There are affidavits from the lawyers who handled the case. Arco's lawyers say that they intended to secure a release relating to contamination, and the plaintiff's lawyers say that they – Kind of the best evidence there might just be what was going on with respect to the notice to the class. Is that correct? And what appears in the settlement agreement, the court's order approving the settlement, and the entire litigation – underlying litigation. Arco makes a big deal of these discovery responses where the plaintiffs disclosed an expert that indicates that there was some heavy metal contamination in the drain tiles. Was it one expert or three? I thought the document said they had three experts. Your Honor, you're probably correct. There may have been more than one expert that was disclosed as intending to provide some testimony about contamination in the drain tiles. That's a far cry from claims for damages, including cleanup damages, for contamination in the soil and the water on these people's properties originating from the Anaconda smelter. When was the nearby Superfund site identified? Had it been identified by EPA and classified as a Superfund site by the time of this litigation? It had. It's difficult to say with any certainty exactly what is encompassed by the Superfund designation. But suffice it to say there was general awareness in the area that there were contamination problems from the operations that had gone on for more than 100 years. At least at the smelter hill, that was certainly true. The town of Opportunity was not designated as an operable unit at that time. There may have been some work that had been done. Counsel, I'm interested procedurally where we are on this. The judge's latest order dissolved the initial injunction, basically reversed his order. He held no subsequent hearing regarding the understanding of the parties at the beginning and the Christensen matter at that time. Is that correct? When there was a motion for reconsideration, the judge granted that motion. Yes. There was a motion to alter or amend. But there was no hearing about what the meaning of the original document was. These were just all paper submissions, right? Yes, that's correct. To be fair to ARCO on this, there's ambiguity. I'm surprised that it wasn't far, far better drafted and so on. But I don't know what went on then. Where do we stand at this point if we hypothetically said, you know, this settlement agreement and the ultimate order, it's vague and ambiguous. You can construe it either way. Under the circumstances, what is your position as to what this court should do? The court should affirm the district court, which found that the proper interpretation of the settlement agreement was that it does not preclude these claims. But that's without any further evidence being taken. The district court just was persuaded by the paper record. I think you indicated you didn't know what came in. There might have been something from the lawyers. There might have been something with respect to the class notice. But if it's ambiguous, it's a very important issue. The judge changed his mind, didn't seem to have documented it in any meaningful way other than that it would be manifestly unjust to allow a class action settlement involving only the drain tile system, which he assumes, which did not even provide class members with individual recoveries to bar claims for toxic contamination, which most class members were most likely unaware of. So he didn't know. He changed his mind. And my question is, would not the proper result be to send it back, Judge Siebel, to conduct such evidentiary hearings as he deems appropriate to determine what the parties did intend in connection with this, what I'm going to call for purposes of our discussion, an ambiguous point in the settlement? I think it would not, Your Honor, because the finding, his finding is supported by the record. He doesn't cite. He doesn't cite anything in there. He doesn't go through and say, I'm relying upon these factors in making my decision. Well, the one factor that he does cite in the order, and he actually refers back to an argument that was raised by my clients in their first brief, his citation to the Supreme Court's decision in Cooper was a reference to an argument that my clients made in the initial opposition to ARCO's motion, which was that the Cooper holding, and we also cited a First Circuit decision that limits the scope of matters that can be resolved in a class action, was consistent with an interpretation of the release that it does not include claims of this kind. And that in the context of this litigation that related to drain tile. I saw the reference to Cooper, but again, he's, this guy kind of begs the question, what did the litigation involve? Your position is it involved only the drain tile matter. I can see that looking at the documents. ARCO's position is, no, it involved a lot more than drain tile. It involved everything. When we knew about this other, it was important. And yet I don't see any evidence in this case, in terms of the injunction that was given to the court, that gave the court basically the full plan of play of what the parties considered, what was the evidence, what is the evidence about what was decided there. You know, I don't think it's just so obvious that the court can just say, oh, well, you know, it's not fair. There's got to be, you know, rule of law for both parties here. If I could make one more point on that, Your Honor, I think there's another important factor as to why it is clear that this was not intended to go beyond the matters that were actually raised by the plaintiffs in their complaint. If this was a situation, as ARCO attempts to characterize it, where these issues of contamination came up, and so that was important to them, and they wanted that to be included in the settlement, then why does the 27-page settlement agreement not even reference it? Why does the court's order not even reference it? Why wasn't it discussed at the transcript or in the hearing on approval of the settlement? There is a transcript in the record where that issue, at least as to heavy metal contamination, doesn't come up at all. As to sewage issues, the court found that those weren't germane. Really what ARCO ---- It did come up, though, did it not, in the proffered reports from the plaintiffs' experts in discovery? There were discovery responses referencing contamination in the drain tile. I disagree with counsel's characterization about soil contamination coming up. I don't recall that being an issue. I could perhaps be corrected on that. But I thought that when plaintiffs identified its three experts or their three experts, part of the proffer as to what the experts would opine on involved heavy metal contamination. They referenced heavy metal contamination in the drain tiles, and I think the most accurate interpretation of what was being presented there was an argument that if you don't maintain these drain tiles, there could be contamination issues associated with that. But really ARCO's argument on this release is that that one little clause bars any claim. It doesn't say we're discharging contamination claims and drain tile claims. According to their interpretation, it says any and all claims, no matter what they relate to. Known or unknown. I mean, isn't that the purpose of inserting that kind of general release language in a complete release? Well, the release language is then modified by the clause, which relate in any way to the drain tile litigation. And the ambiguity of the question is. I'm not so sure. The way I read it, I think it's the complete release modifies the two clauses. I'm having a hard time even invoking the last antecedent or intervening antecedent rule that you take the clause out of the second, the language out of the second clause, and then modify the first clause with it. That doesn't make any logical sense to me in interpreting that language. Well, I think it could be read as modifying both, or it could be read as modifying the former. And that raises the ambiguity. And the Court found in the context of the case, which includes settling the claims of absent class members with the due process concerns that go along with that, that the intent of this settlement was to resolve the drain tile litigation. But isn't that really an unconscionability analysis under Montana law, as opposed to the scope of the release? It's just a question of if it's not fair to the absent class members to tag them with the release of that particular claim. Well, it's. Even though that's. I wouldn't view it as an unconscionability challenge. The Court, in approving a class action settlement as a matter of due process, has to go through a number of factors and ensure that the settlement is fair and so forth, that adequate notice was provided. And what Judge Siebel's order can only be understood as finding that in light of that, the Court would not have approved a settlement that was intended to be applied as broadly as ARCO attempts to apply it. You're way over your time. Thank you very much. Thank you. Yeah. There are a couple of things I'd like to address, but I'd first like to begin with what actually happened in the district court. There's been some suggestion here that the district court adopted the plaintiff's reading of the release language or that the district court found the release language to be ambiguous. That didn't happen. Neither of those things happened. The court, in fact, held, and I'm reading from the court's order on page 6 of the excerpts, in this court's view, the phrase, quote, All claims, each of them, and any member of the class may have against defendants, whether known or unknown, is not ambiguous. The district court never changed that ruling. On motions for reconsideration, however, it held that the release could not be enforced on the basis of class action jurisprudence. And that was clearly error, and I'm happy to discuss why the Cooper case doesn't apply here if the court would like to hear argument on that point. Your time is running out, so keep it short and to the point. I'll move on. Our position is that first category of the release clearly applies to these claims, and it's not ambiguous. The all that's underlined in that first category and the separate enumeration of an agreement should dispel any doubts on that point. Second, my opponent has suggested that not all class members were individually named parties to this case. There's a stipulation that's signed by attorneys for both sides and a separate order entered by the court that adds those persons as parties. And there's also a specific reference in the order approving the class action settlement that indicates that addition of those persons is a condition, an express condition, of a settlement. But even if there were some doubt on that that has to be resolved on remand, the more important point here is that this was primarily an individual claims case. The class was certified. It was settled as a class action. One claim out of eight, Your Honor. One claim out of eight was certified as a class action. It was a certified class action. One claim. But it was settled as a certified class action with all the procedures that were, that are inherent in that kind of settlement. That's true. And those procedures were followed. You know, I know what goes on in these matters because I've approved a number of class action settlements as a district court judge. I have no doubt that you do, Your Honor. But there is such a thing. In Cooper, the Supreme Court case the district court relied on explicitly contemplates a sort of class action where some claims proceed on a class basis and some proceed on an individual basis. That's exactly what happened here, and there were separate releases. Individual releases and class releases. But I asked you before. Where are the individual releases? It's in the judgment. The final judgment. Where are the individual releases signed by the individual plaintiffs? There aren't any. There aren't any. As I'm aware of, but there don't need to be. Proceeded as a class action. Mr. Rothberg, can I ask one other question here? If arguendo, this panel, as opposed to Judge Siebel, found or finds that the settlement agreement language in question is ambiguous, what's our appropriate remedy? Send it back to the district court for hearing on what the intention of the parties was, parole evidence, if you will, and the like? I think that would be the most prudent course because that issue has never been fully litigated in front of the district court. We've never had a hearing on that, and it's really never been briefed other than the parties kind of going past each other on that issue. Okay. Thank you. Thank you very much. We appreciate your arguments. Very good. Very helpful and very informative and interesting case. And thank you all.
judges: Paez, Tallman, Smith M.